[No. B149009. Second Dist., Div. Six. Dec. 23, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY ALLAN PIERCE, Defendant and Appellant.

## COUNSEL

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Here we hold, among other things, that assault with intent to commit rape (Pen. Code, § 220) is a sexual offense within the meaning of Evidence Code section 1108.[1]

Jerry Allan Pierce appeals his conviction by jury of attempted kidnapping and assault with the intent to commit rape. (Pen. Code, §§ 207, subd. (a), 664, 220.) We affirm.

### FACTS

After completing her work shift, 17-year-old Silvia V. was walking home alone at night. Pierce "went past [her,]" took a couple of steps, then came back and grabbed her. He twisted her left hand behind her back and held his hand over her mouth. When she started to scream, he told her to "keep quiet." She held on to a fence, but he pulled her by her waist towards a dark area. From bushes near the fence, she saw a light and heard a man scream, "Why are men so dirty?" Pierce released Silvia V. and ran away.

Juan Hernandez testified he saw the attack on Silvia V. He turned on his car headlights, honked his horn, and saw Pierce run away.

After police advised Pierce of his rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]), he confessed that he grabbed Silvia V., she screamed and he put his hand over her mouth. He said he was motivated by a sexual impulse—the same impulse he had 20 years earlier with a girl in Santa Barbara.

In the defense portion of the case, Pierce's treating psychiatrist, Corazon Elliott, testified that Pierce suffers from paranoid schizophrenia. But Elliott acknowledged that Pierce is aware of his surroundings, his memory "is intact," and he cannot be "misled into believing something" that is not true.

Randy Wood, a defense psychologist, testified that Pierce's confession is unreliable. He claimed it contains statements that are "products of [Pierce's] psychotic thinking" and "delusional beliefs." Wood conceded, however, that Pierce gave responsive answers to police questions. On cross-examination, Wood said Pierce told him he was unable to disagree with the suggestive questioning by police during his confession. But Wood testified that many references in the transcript of that confession showed Pierce "felt comfortable" disagreeing with the police.

---

[1]All statutory references are to the Evidence Code unless otherwise stated.

In rebuttal, Doctor Malcolm Normington testified Pierce is well oriented and his thought processes are coherent.

### Prior Uncharged Sexual Offense

One evening in 1977, Ann M., then 22 years old, rode her bicycle to a bar in Santa Barbara and met a friend, Bill. They went to another bar where Pierce approached them asking for money. Ann M. gave him a dollar to watch her bicycle while she and Bill entered the bar. When they came out, Pierce, although uninvited, began to walk with them until Bill left. Ann M. got on her bicycle and tried to leave, but Pierce knocked her off the bicycle, picked her up and carried her to an area near some bushes. When she screamed, he covered her mouth and told her to "shut up." He threw her down and removed her clothes. This offense resulted in a conviction of rape.

In a pretrial hearing, the court overruled Pierce's objection to the evidence about the incident involving Ann M. It found the prior conviction was "highly relevant" as it showed "a propensity to commit sexual offenses against young women" and it resulted in a conviction. The trial court stated that the time required to prove the prior offense was minimal and its remoteness was the only factor favoring Pierce's position. It did not allow the prosecution to prove Ann M.'s injuries because injury evidence would be inflammatory. It concluded the probative value of the prior offense "far outweighs any prejudicial effect."

### DISCUSSION

### Penal Code Section 220 Is a "Sexual Offense" Under Section 1108

Pierce was charged with assault with intent to commit rape. (Pen. Code, § 220.) Section 1108, subdivision (a) states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."[2] ■ Section 1108 therefore permits the trier of fact to consider defendant's prior sex offenses as propensity evidence. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 [89 Cal.Rptr.2d 847, 986 P.2d 182].)

---

[2]At the time of the offense, section 1108 stated in its entirety: "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352. [¶] (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least 30 days before the scheduled date of trial or at such later time as the court may allow for good cause. [¶] (c) This section shall not be construed to limit the

Pierce contends assault with intent to commit rape is not a sexual offense within the meaning of the statute. The Attorney General correctly notes Pierce did not raise this issue in the trial court and therefore did not preserve it for review. (*People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1015 [30 Cal.Rptr.2d 818, 874 P.2d 248].) But considered on the merits, the result is the same.

Section 1108, subdivision (d)(1)(A), (E) defines " 'sexual offense' " to include both rape and attempted rape. (Pen. Code, §§ 261, 664.) "An assault with intent to commit rape is a form of attempted rape. [Citation.]" (*People v. Holt* (1997) 15 Cal.4th 619, 674 [63 Cal.Rptr.2d 782, 937 P.2d 213].) It is an "aggravated form" of that offense because it is a combination of the elements of attempted rape and assault. (*People v. Rupp* (1953) 41 Cal.2d 371, 382 [260 P.2d 1].) Secondly, subdivision (d)(1) defines " '[s]exual offense' " to be a "crime under the law of a state or of the United States" that involves conduct proscribed by the offenses listed in subdivision (d)(1)(A). Pierce's offense involves such conduct.

Pierce also comes within section 1108, subdivision (d) because his offense involves "[a]n attempt . . . to engage in conduct described in this paragraph." (*Id.* at subd. (d)(1)(E).) The instant offense was committed to derive "sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person." (*Id.* at subd. (d)(1)(D).)

In 2002 the Legislature passed Assembly Bill No. 2252 (2001-2002 Reg. Sess.), which amended section 1108. New subdivision (d)(1)(B) includes

admission or consideration of evidence under any other section of this code. [¶] (d) As used in this section, the following definitions shall apply: [¶] (1) 'Sexual offense' means a crime under the law of a state or of the United States that involved any of the following: [¶] (A) Any conduct proscribed by Section 243.4, 261, 261.5, 262, 264.1, 266c, 269, 286, 288, 288a, 288.2, 288.5, or 289, or subdivision (b), (c), or (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11, 314, or 647.6, of the Penal Code. [¶] (B) Contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person. [¶] (C) Contact, without consent, between the genitals or anus of the defendant and any part of another person's body. [¶] (D) Deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person. [¶] (E) An attempt or conspiracy to engage in conduct described in this paragraph. [¶] (2) 'Consent' shall have the same meaning as provided in Section 261.6 of the Penal Code, except that it does not include consent which is legally ineffective because of the age, mental disorder, or developmental or physical disability of the victim."

Section 1101, subdivision (b) states: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

within the definition of "sexual offense," "[a]ny conduct proscribed by section 220 of the Penal Code, except assault with intent to commit mayhem." (Stats. 2002, ch. 194, § 1.)

Pierce notes that the Legislative Counsel's Digest states: "This bill would expand the definition of 'sexual offense' for the purposes of the aforementioned exception to the rule against the admission of character evidence to include those violations of the law proscribing assault with the intent to commit a specified felony that requires sexual intent." (Legis. Counsel's Dig., Assem. Bill No. 2252 (2001-2002 Reg. Sess.).) He contends this shows that his offense of assault with intent to commit rape was not included within section 1108 until this recent amendment. We disagree.

■ The Legislative Counsel's Digest does "not have the force of law, for the interpretation of law is a judicial function." (*People v. Cruz* (1996) 13 Cal.4th 764, 780 [55 Cal.Rptr.2d 117, 919 P.2d 731].) "[W]hen a court is called upon to determine the scope of an earlier version of an existing statute, the Legislature's assumption that its current amendment represents an expansion of an earlier provision cannot be determinative of the question." (*Id.* at p. 781.) The court must decide "whether the subsequent amendment actually constitutes a modification or instead a clarification of the preexisting provision. [Citations.]" (*Ibid.*)

■ We conclude that the amendment only clarified the preexisting statute by explicitly including offenses that previously fell within section 1108. As the Attorney General correctly notes, prior to this amendment, the broad language of section 1108, subdivision (d)(1)(B) through (E) encompassed assault with intent to commit rape. This amendment did not eliminate those provisions. Moreover, Pierce's offense is an aggravated form of attempted rape, which before and after the amendment falls within section 1108.

The amendment does not demonstrate an intent to change the law. Page 6 of the bill analysis of the Assembly Committee on Public Safety prepared for the May 7, 2002, hearing on Assembly Bill No. 2252, states: "Adding Penal Code Section 220, with the exception of assault with intent to commit mayhem, appears consistent with the intent of the Legislature in enacting Evidence [Code] Section 1108."

Under Pierce's interpretation of the statute, if he had committed attempted rape, section 1108 would apply. But because he committed the more serious offense of assault with intent to commit rape, it does not. We are confident the Legislature did not intend such an absurd result. (*People v. Cruz, supra,* 13 Cal.4th at p. 783.)

## Prior Rape Conviction

■ Pierce contends the trial court abused its discretion by admitting evidence concerning a prior 23-year-old rape conviction. (§ 352.) We disagree.

Before admitting propensity evidence of a prior sex offense, the court "must engage in a careful weighing process under section 352." (*People v. Falsetta, supra,* 21 Cal.4th at p. 917.) It must consider factors including relevance, similarity to the charged offense, the certainty of commission, remoteness, and the likelihood of distracting or inflaming the jury. (*Ibid.*)

Pierce contends the prior conviction was too old to show propensity, therefore it has no probative value. But "[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible. [Citation.]" (*People v. Branch* (2001) 91 Cal.App.4th 274, 284 [109 Cal.Rptr.2d 870] [evidence of a sex offense committed 30 years earlier was properly admitted].) Here the trial court carefully weighed the remoteness issue with a series of other factors. It found remoteness was "the only plus for the defendant's side," but the prior conviction was "highly relevant." It showed "a propensity to commit sexual offenses against young women." Moreover, Pierce had been incarcerated for at least 12 years after the 1977 rape.

Pierce has not shown error. "[S]ubstantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses. [Citation.]" (*People v. Branch, supra,* 91 Cal.App.4th at p. 285.) Here there are substantial similarities between the two offenses and the two victims. Pierce attacked Ann M. and Silvia V., two young women who were alone on city streets at night. He put his hand over their mouths, told them to shut up or keep quiet, and dragged them near bushes or dark areas. The only difference between the two events is that a third party intervened to protect Silvia V.

Significantly, Pierce mentioned the Santa Barbara incident in his confession. He admitted he had a similar sexual impulse in the two incidents. This was highly probative evidence regarding his intent at the time he grabbed Silvia V. On this ground, the prior offense is admissible under section 1101, subdivision (b). The trial court could reasonably infer that the similarities were substantial enough to "balance out the remoteness" in favor of admission of the prior offense. (*People v. Branch, supra,* 91 Cal.App.4th at p. 285.)

The trial court considered the likelihood of undue prejudice. It noted that the prior offense resulted in a conviction. Because the jury knew this, it

"would not be tempted to convict [Pierce] simply to punish him for the other," prior offense. (*People v. Falsetta, supra,* 21 Cal.4th at p. 917.) Little time was devoted to the prior offense; it involved only 17 pages of transcript. (*People v. Branch, supra,* 91 Cal.App.4th at pp. 285-286.) The court also disallowed inflammatory evidence about Ann M.'s injuries. Pierce has not shown the court abused its discretion by finding the probative value "far outweighs any prejudicial effect."

■ Pierce contends prejudice from the admission of his prior offense is strong because evidence of the instant offense was weak. He characterizes his highly incriminating confession as "the ravings of a person in a psychotic state." The medical evidence shows otherwise. Elliott, his treating psychiatrist, testified Pierce is aware of his surroundings, his memory is "intact," and he cannot be misled into believing something that is not true. Normington testified Pierce is well oriented and his thought processes are coherent. The jury could reasonably infer that psychologist Wood's opinion had been impeached by his testimony about Pierce's responsive answers to police questions. Wood's testimony on cross-examination also seriously undermined Pierce's claim that his confession was involuntary. There was a witness to the crime and it is not reasonably probable that the result would be different without Ann M.'s testimony.

The judgment is affirmed.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied January 15, 2003, and appellant's petition for review by the Supreme Court was denied March 5, 2003.